**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE

**MICHAEL RAY JONES**                                                       **CASE NO. 05-55697**
**LINDA KAY JONES**                                                         **CHAPTER 7**

**DEBTORS**

**MEMORANDUM OPINION AND ORDER GRANTING
DEBTOR'S MOTION FOR CONTEMPT AGAINST CAPITAL ONE BANK**

This matter is before the Court on Debtor's Motion for Contempt [ECF No. 19 ("Contempt Motion")] against Creditor Capital One Bank. Debtor Linda Kay Jones seeks a ruling that Creditor violated the discharge injunction in § 524(a)(2)[1] by failing to release a judgment lien that a prior Order of this Court avoided more than 13 years ago, after Debtor received her chapter 7 discharge. Debtor requests that the Court hold Creditor in contempt for that violation and award Debtor actual damages, attorney's fees, costs, and mild non-compensatory damages. The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

**FINDINGS OF FACT**

**A.**      **Procedural Background**

         **1.**      **Bankruptcy Case Activity in 2005 and 2006**

Linda Kay Jones and Michael Ray Jones[2] jointly filed this chapter 7 case on October 14, 2005 ("Petition Date"). Debtors' Schedule A lists their joint, fee simple ownership of one parcel of real property located at 229 Vine Street, Sadieville, Scott County, Kentucky (the "Vine

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as Bankruptcy Rule ___.

[2] Debtor Michael Ray Jones is deceased.

Property"). Debtors claimed a $6,000 exemption in the Vine Property on Schedule C. Schedule D lists Creditor as being owed a $2,602 debt that arose in April 2001 and that is secured by a judgment lien on the Vine Property. Schedule D also listed seven other parties designated as "representing" Creditor. [ECF No. 1 at 10-11.] Creditor and all seven other parties were listed on the mailing matrix that Debtors filed with their petition, and the record reflects that the Bankruptcy Noticing Center served the Notice of Debtors' bankruptcy on all of them. The mailing matrix has never been amended.

On the Statement of Intention filed with their petition, Debtors stated their intent to avoid Creditor's judgment lien on the Vine Property. On February 22, 2016, Debtors filed a Motion to Avoid Judgment Lien [ECF No. 8 ("Avoidance Motion")], seeking to avoid the Notice of Judgment Lien that Creditor filed in the Scott County, Kentucky Clerk's Office against "all of the right, title and interest of [Debtor Linda Jones] in and to any real property located in Scott County, Kentucky." [ECF No. 8-2 ("Judgment Lien"); *see also* ECF No. 19 at 10 (file-stamped copy of Judgment Lien).] Debtors sought to avoid the Judgment Lien pursuant to § 522(f), arguing that it is a "judicial lien" that impaired their exemption in the Vine Property. The Judgment Lien states on its face that it was prepared by an attorney with the law firm of Lloyd & McDaniel, PLC. In the certificate of service within the Avoidance Motion, Debtors' counsel certified that he served the Avoidance Motion on Creditor in care of Lloyd & McDaniel, PLC at the address listed on the Judgment Lien.[3]

No party objected to the Avoidance Motion. The Court entered an Order granting Debtors a chapter 7 discharge on March 9, 2006. [ECF No. 11 ("Discharge Order").] Four days later, on March 13, 2006, the Court entered an Order granting the Avoidance Motion. [ECF No.

---

[3] Lloyd & McDaniel, PLC was included on Debtors' mailing matrix as one of the parties representing Creditor.

13 ("Avoidance Order").]  The record does not show that the Avoidance Order was served on Creditor.  Debtors' bankruptcy case was closed on April 6, 2006.

### 2. Bankruptcy Case Activity in 2019

On January 15, 2019, Debtor Linda Kay Jones[4] filed three motions in this case.  She filed a Motion to Reopen Case so that she could "take action against a creditor that is continuing to collect on a discharged debt." [ECF No. 17 ("Motion to Reopen") at 1.]  She filed a Motion to Substitute Counsel because her 2005 attorney was no longer representing debtors in bankruptcy, and she "need[ed] an attorney to file a Motion for Contempt regarding a discharge violation." [ECF No. 18 ("Motion to Substitute") at 1.]  She also filed the Contempt Motion.  The Contempt Motion asserts that Debtor recently inherited real estate in Scott County, Kentucky, which she and her siblings were attempting to sell, but the closing was being delayed because Creditor had not released the Judgment Lien that was avoided nearly 13 years ago.

All three Motions included certificates of service.  Debtor's new bankruptcy counsel, J.D. Kermode, certified that he served the Motion to Reopen and Motion to Substitute on all creditors on January 15, 2019.[5]  Mr. Kermode certified that he served the Contempt Motion via certified mail to Creditor in care of Creditor's Chief Executive Officer, Richard Fairbank, that same day.  Debtor avers in her Supplemental Brief that, upon information and belief, Creditor received the Motion for Contempt on January 23, 2019.

All three Motions included notices of hearing.  The Contempt Motion was properly noticed for hearing on February 14, 2019.  Because the notices in the other two Motions

---

[4] Hereinafter, "Debtor" refers solely to Linda Kay Jones.

[5] Mr. Kermode's certifications state that he served the Motion to Substitute on "[t]he creditors per the mailing matrix" and served the Motion to Reopen on "the creditors."

3

contained incorrect dates, Mr. Kermode filed amended hearing notices on January 16, 2019, and certified that he served them that day on all creditors.

The Court held a hearing on the three Motions on February 14, 2019. No party responded to any of the Motions, and Mr. Kermode was the only person who attended the hearing. The Court granted the Motion to Reopen and the Motion to Substitute Counsel. The Court entered a separate Order regarding the Contempt Motion, which stated in part:

> It is ORDERED that, based upon the Court's review of the record, the Court finds that Creditor Capital One Bank's ("Creditor") judicial lien on Debtor's real property has been avoided. [ECF No. 13.] An Order of Discharge was entered on March 9, 2006. Accordingly, the Court shall enforce the discharge injunction and Creditor Capital One Bank shall forthwith release its judicial lien on the real estate located at 229 Vine Street, Sadieville, Kentucky. If the Lienholder fails to act within 30 days, the Debtor is authorized to present this Order to the applicable recording office and the designated recording officer shall note the release in the applicable lien records.

[ECF No. 30 ("Release Order") at 1.] The Release Order directed Debtor to supplement the record with evidence supporting the remaining relief requested in the Contempt Motion, specifically including damages, within 14 days. The Release Order also allowed any party 21 days from its entry to respond to Debtor's supplement or to otherwise supplement the record with any legal authority or other matters supporting its position regarding the Contempt Motion. Finally, the Release Order set a continued hearing on the Contempt Motion for March 21, 2019 and directed Debtor to serve the Order on Creditor. Mr. Kermode filed a Certificate of Service evidencing that he served the Release Order via certified mail to Creditor in care of CEO Richard Fairbank on February 15, 2019. Debtor avers in her Supplemental Brief that, upon information and belief, Creditor received the Release Order on February 22, 2019.

To further support the Contempt Motion, Debtor timely filed her sworn Affidavit, documents relating to her inheritance and proposed sale of real estate, and Mr. Kermode's

invoice for time spent representing Debtor in this matter through February 28, 2019. Debtor also timely filed her Supplemental Brief. No other party filed anything. Mr. Kermode certified that he served the Affidavit and accompanying documents and, separately, the Supplemental Brief, via certified mail to Creditor in care of Mr. Fairbank on January 28, 2019, and March 7, 2019, respectively.

The Court held a continued hearing on the Contempt Motion on March 21, 2019. Again, only Debtor's counsel appeared. After hearing argument, the Court granted Debtor seven days within which to supplement the record with evidence of the time Mr. Kermode spent representing Debtor in this matter after February 28, 2019. Mr. Kermode timely filed his updated invoice, and the Court took this matter under submission.

**B.     Debtor's Inheritance and Sale of Real Estate**

Debtor still owns the Vine Property. Also, upon her father's death in January 2012, Debtor inherited a 1/6 interest in real estate located at 825 Pokeberry Road, Sadieville, Scott County, Kentucky (the "Pokeberry Property"). Upon her mother's death in December 2017, Debtor inherited a portion of her mother's interest in the Pokeberry Property, thereby increasing Debtor's interest to 1/3. Debtor's brother was appointed administrator of her mother's estate. On July 27, 2018, the estate contracted to sell the Pokeberry Property.

Debtor then discovered that Creditor had not released the Judgment Lien. Because the Judgment Lien was a cloud on the Pokeberry Property's title, the sale closing date was extended to January 18, 2019. On December 18, 2018, Debtor sent Creditor a certified letter requesting that Creditor immediately release the Judgment Lien against her because she no longer owed money to Creditor. Debtor also called Lloyd & McDaniel, PLC regarding the Judgment Lien on

January 17, 2019 (two days after filing the Contempt Motion) and was told she still owed $4,851.90 to Creditor.

The closing did not occur as scheduled on January 18, 2019 because Creditor had not released the Judgment Lien. The parties executed a Third Addendum to the Purchase and Sale Agreement that delayed the closing until almost a month later, February 15, 2019, and provided that the sales price would be reduced by $5,000 if Creditor had not released the Judgment Lien by that date. The other heirs to the estate refused to sign the Addendum unless Debtor agreed that the $5,000 reduction would be subtracted from her share of the sale proceeds.

Creditor did not release the Judgment Lien, and the closing did not occur on February 15, 2019. The parties executed a Fourth Addendum to the Purchase and Sale Agreement that delayed the closing until February 22, 2019 and provided that the sale price would be reduced by $7,500 if the closing did not occur by that date. The other heirs to the estate refused to sign that Addendum unless Debtor agreed that the $7,500 reduction would be deducted from her share of the sale proceeds. The closing did not occur by that date, and the sale price and Debtor's portion of the sale proceeds were reduced by $7,500.

The closing was then scheduled for the following week, February 28, 2019, and the purchaser indicated that he would back out of the purchase contract if the closing did not occur on that date. The closing occurred as scheduled. The closing attorney withheld an additional $2,000 from Debtor's portion of the sale proceeds for 21 days due to Creditor's failure to release the Judgment Lien, despite the attorney's receipt of this Court's Release Order. The closing attorney also charged Debtor a $13 fee for filing a "lien release." [ECF No. 33 at 6.] The record does not reflect whether that the closing attorney returned that $2,000 to Debtor.

6

Creditor has never appeared in this case, despite being served with multiple pleadings relating to the Contempt Motion. Nothing in the record reflects that the Judgment Lien has been released.

### C.     Actual Damages and Attorney's Fees

Debtor seeks an award of actual damages including: (a) $7,500 for the reduction in her portion of the Pokeberry Property sale proceeds; (b) $13 for the lien release filing fee that the closing attorney charged her; (c) the $260 filing fee that she incurred by reopening her closed bankruptcy case; and (d) an unspecified amount for the emotional distress she suffered as a result of Creditor's actions. She also seeks an award of attorney's fees. Mr. Kermode's invoice reflects that he spent 21.8 hours representing her in this matter from December 18, 2018 through March 21, 2019. The invoice does not include an hourly rate, but Mr. Kermode advised at the March 21, 2019 hearing that he has charged $350 per hour in cases in which he represented bankruptcy trustees.

Debtor's Affidavit describes the strain that Creditor's failure to release the Judgment Lien has placed on Debtor's relationship with her family. Until this matter began, Debtor's family was unaware that she filed bankruptcy in 2005. Debtor states that her family's awareness of her bankruptcy case has caused her to suffer "tremendous" embarrassment. [ECF No. 33 at 7.] As of the filing of her Affidavit, Debtor's brother refused to speak with her, and her niece and nephew had repeatedly pressured her over the delayed closing. Debtor states that her brother, niece, and nephew blame Debtor—not Creditor—for the delay. She explained that they pressured her to resolve the issue, even requesting that she pay off her discharged debt to Creditor so that the closing could occur.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. §§ 1408 and 1409. This is a core proceeding, and the Court is authorized to enter a final order adjudicating this matter. 28 U.S.C. § 157(b)(2)(A) and (O).

**I.    Creditor Violated the Discharge Injunction.**

This Court granted Debtor a discharge under § 727, which discharged Debtor "from all debts that arose before the date of the order for relief" in this case, including her debt to Creditor. 11 U.S.C. § 727(b). Under § 524(a)(2), that discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). "The discharge injunction promotes the fresh start policy of the Bankruptcy Code." *In re Joseph*, 584 B.R. 696, 705 (Bankr. E.D. Ky. 2018) (citing *In re Oster*, 474 F. App'x 422, 424 (6th Cir. 2012)). To that end, "[t]he purpose of § 524(a) is to ensure that when a bankruptcy court enters an order discharging a debtor's outstanding debts, the debtor will be automatically protected against future attempts to collect on the discharged debts." *In re Isaacs*, 895 F.3d 904, 910 (6th Cir. 2018) (citation omitted). However, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

As of the Petition Date, Creditor had an *in personam* claim against Debtor and, by virtue of the Judgment Lien, also had an *in rem* claim against all real estate that Debtor owned in Scott County on that date. *See In re Blakely*, No. 13-50069, 2013 Bankr. LEXIS 5474, at *1-2 (Bankr. E.D. Ky. Mar. 27, 2013) ("A Kentucky judgment lien attaches to real property, which creates an

8

*in rem* claim; *i.e.*, a claim that attaches to the property itself. … Therefore, a judgment lien is an *in rem* claim against any real property owned by the judgment debtor at the petition date.") (citations omitted). Creditor's *in personam* claim against Debtor was extinguished on March 9, 2006, upon entry of the Discharge Order. 11 U.S.C. § 727(b). That discharge voided Creditor's underlying judgment against Debtor for the discharged debt. *See* 11 U.S.C. § 524(a)(1) (a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . .")

Following discharge, Creditor retained an *in rem* claim against the only real property that Debtor owned on the Petition Date: the Vine Property. On March 13, 2006, however, Creditor's *in rem* claim against the Vine Property was extinguished when the Court entered the Avoidance Order. At that point, Creditor had no remaining claims against Debtor, either *in rem* or *in personam*, and the § 542(a)(2) discharge injunction prohibited Creditor from taking future collection action against Debtor or her property. Yet, Creditor allowed the Judgment Lien to remain of record, thereby impeding Debtor's "fresh start" after bankruptcy. *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (citation omitted) ("The very point of a lien is that it coerces the property holder to settle a debt in order to maintain rights in the property.")

The Judgment Lien's interference with Debtor's efforts to sell the Pokeberry Property illustrates the financial pressure that the Lien's continued presence places on Debtor. A judgment lien "represent[s] to the least sophisticated consumer and the public that the creditor had a final judgment, had a right to execute on that judgment, and had a valid interest in the debtor's [real estate]." *Currier*, 762 F.3d at 535 (citation omitted). "Judgment liens under

9

Kentucky law are enforceable for fifteen years, a potentially lengthy time period for the cloud of an unenforceable lien to hang over a debtor." *Blakely*, 2013 Bankr. LEXIS 5474, at *4 (citing K.R.S. § 413.090). "A judgment lien is a cloud on title, which is enough for many or most financial institutions to refuse to make a loan." *Id.* Judgment liens are also enough to cause potential real estate purchasers to refuse to consummate a proposed sale, which is what occurred in this case.

Even though Debtor's debt to Creditor was discharged in 2006, and the Judgment Lien was avoided in 2006, the Lien's presence caused the other parties to the proposed Pokeberry Property sale to refuse to proceed unless Debtor agreed to a reduced purchase price and a commensurate reduction in her portion of the sale proceeds. That placed an improper burden on Debtor and her interest in the Pokeberry Property in violation of the § 542(a)(2) discharge injunction. *See Currier*, 762 F.3d at 534-35 (citation omitted) (noting, in the context of a Fair Debt Collection Practices Act claim, that an invalid "judgment lien placed an improper burden on [debtor's] home, restricting her rights in her own property until [creditor] decided to release the lien or [debtor] undertook the burden of filing an action to quiet title"). Debtor's interest in the Vine Property is similarly burdened. Although Debtor is not presently attempting to sell or obtain debt secured by the Vine Property, the Judgment Lien remains a cloud on its title.

For the foregoing reasons, the Court finds that Creditor's failure to release the Judgment Lien violates the § 524(a)(2) discharge injunction.

## II.     Creditor is in Contempt for Violating the Discharge Injunction.

"[B]ecause the Code does not specify a remedy for a violation of the discharge injunction, the Debtor's only recourse is to request sanctions for contempt of court." *In re Frambes*, No. 08-22398, 2012 WL 400735, at *6 (Bankr. E.D. Ky. Feb. 7, 2012) (citing *Pertuso*

*v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000)). "To impose contempt sanctions on an alleged violator of the discharge injunction, the Court must conclude that the creditor's conduct violated the discharge injunction and was contemptuous." *In re Campbell*, No. 10-22561, 2014 WL 32161, at *5 (Bankr. E.D. Ky. Jan. 6, 2014). "In the context of a violation of the discharge injunction, [contemptuous] means that the act must have been willful." *Id.* at *6 (citing *Gunter v. Kevin O'Brien & Assocs., LPA (In re Gunter)*, 389 B.R. 67, 75 (Bankr. S.D. Ohio 2008); *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 756 (Bankr. E.D. Tenn. 2002)).

Proof that a creditor intentionally violated the discharge injunction is not required to find a "willful" violation. *In re Martin*, 474 B.R. 789 (unpublished table decision), *available at* 2012 WL 907090, at *6 (B.A.P. 6th Cir. Mar. 7, 2012) (citing *McCool, et al. v. Beneficial (In re McCool)*, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010)). Rather, "[t]he question of whether the violation is willful is based on whether the creditor intended the acts that constituted the violation." *Campbell*, 2014 WL 32161, at *6. "Thus, a debtor who alleges a violation of § 524(a)(2) must establish by clear and convincing evidence that the creditor: (1) violated the discharge injunction and (2) did so with actual knowledge of the injunction." *Id.* (citations omitted).

As discussed above, Debtor has met her burden to show that Creditor violated the § 524(a)(2) discharge injunction by failing to release the Judgment Lien. The Court must now determine the point at which Creditor obtained actual knowledge of the injunction. Although the Avoidance Order avoided Creditor's Judgment Lien on the Vine Property in 2006, there is no evidence that the Avoidance Order was served on Creditor at any time before Debtor filed the Contempt Motion. However, there is no question that the properly-served Contempt Motion

provided Creditor actual knowledge of the injunction in January 2019, as did the properly-served Release Order in February 2019.

Bankruptcy Rule 7004(h) specifies the requisite method of service to Creditor as an insured depository institution.[6] "Service on an insured depository institution . . . in a contested matter . . . shall be made by certified mail addressed to an officer of the institution unless" one of three exceptions not satisfied here applies. FED. R. BANKR. P. 7004(h). Debtor's counsel certified that he served the Contempt Motion and Release Order on Creditor by certified mail in care of its Chief Executive Officer on January 15, 2019, and February 15, 2019, respectively. Debtor avers that Creditor received both pleadings, the Contempt Motion on January 23, 2019, and the Release Order on February 22, 2019. Both pleadings discuss Debtor's discharge and the Judgment Lien's avoidance. Therefore, the Court finds that Creditor obtained actual knowledge of the discharge injunction when it received the Contempt Motion on January 23, 2019.

Debtor has satisfied her burden to establish by clear and convincing evidence that Creditor willfully violated the § 524(a)(2) discharge injunction. Creditor is in contempt for its failure to comply with the Avoidance Order, the Discharge Order, and the Release Order.

## III.  Debtor is Entitled to Damages and Non-Compensatory Sanctions as a Result of Creditor's Contempt.

"Section 524(c) does not specifically authorize monetary relief for a violation of the discharge injunction, but courts may award actual damages based on their inherent contempt power." *Joseph*, 584 B.R. at 705 (citation omitted). "If contempt is present, the court may sanction the contemnor by awarding damages and attorneys' fees to the debtor." *Frambes*, 2012

---

[6] The Federal Deposit Insurance Corporation's BankFind website, https://research.fdic.gov/bankfind, allows users to search for FDIC-insured banking institutions. The search results for "Capital One Bank" indicate that it is an assumed name for Capital One, National Association, which has been FDIC insured since 1934, and for Capital One Bank (USA), National Association, which has been FDIC insured since 1994.

WL 400735, at *7 (citations omitted). "A court may also award 'mild non-compensatory punitive damages' as necessary to enforce the Bankruptcy Code," under § 105(a). *Joseph*, 584 B.R. at 705 (quoting *In re Biery*, 543 B.R. 267, 297 (Bankr. E.D. Ky. 2015)).

Sanctions are warranted in this case. Creditor's Judgment Lien has improperly been a cloud over Debtor's real estate interests in Scott County, Kentucky for more than thirteen years. Creditor has had knowledge of this matter at least since January 23, 2019. Despite having the opportunity to make written and oral arguments before this Court, and to remedy its ongoing discharge injunction violation, Creditor chose to do neither. Creditor's failure to act demonstrates its abject disregard for three separate Orders of this Court—the Discharge Order, the Avoidance Order, and the Release Order—and for its obligations under the Bankruptcy Code.

The record supports an award of the damages Debtor requested as outlined above. Her damage claims directly result from Creditor's failure to release the Judgment Lien and violation of the discharge injunction. Debtor would not have incurred either of the filing fees or been forced to accept a reduced portion of the Pokeberry Property sale proceeds had Creditor released its Lien. Creditor's violation also directly yielded Debtor's suffering of tremendous stress and embarrassment during the prolonged delay of the Pokeberry sale, as well as the erosion of her familial relationships. The Court will award Debtor actual damages of $2,500 for that delay, stress, and embarrassment. Debtor is awarded $7,773 for the two filing fees and the sale proceeds reduction as well.

Debtor also requests an award of attorney's fees. "[T]he Court has the discretion to award attorneys' fees [when a discharge violation has occurred] and in doing so, must find them to be reasonable." *Frambes*, 2012 WL 400735, at *7 (citing, *inter alia*, *Duling v. First Fed.*

13

*Bank of the Midwest (In re Duling),* 360 B.R. 643, 647 (Bankr. N.D. Ohio 2006) ("The sanctions imposed by a court *may* include . . . *reasonable* attorney fees.") (emphasis added in *Frambes*)). Mr. Kermode's invoice supports Debtor's assertion that he spent 21.8 hours representing her in this matter, and the Court finds that amount of time reasonable. While Mr. Kermode stated that he has charged $350 per hour in cases in which he represented trustees, the Court believes that a $275 hourly rate is reasonable in this particular matter. Debtor is awarded $5,995 in attorney's fees.

Debtor also seeks an award of mild non-compensatory damages in an amount that the Court deems appropriate. "The filing of and refusal to release an invalid lien is taken seriously in Kentucky . . . ." *Currier*, 762 F.3d at 535 (citations omitted). Although *Currier* was decided in the context of a Fair Debt Collection Practices Act claim, its recognition of the seriousness of a creditor's failure to timely release an invalid lien in Kentucky is persuasive.

Creditor could have easily complied with the Court's Discharge, Avoidance, and Release Orders by releasing the Judgment Lien. As a sizeable financial institution that is often involved in bankruptcy cases in this Court, it is highly likely that Creditor has an internal procedure for responding to an order avoiding a lien under § 522(f). When it received the Contempt Motion, Creditor could have filed a response or attended either of the two hearings on the Motion. Creditor also could have simply released the Judgment Lien and resolved any related issues with Debtor outside of court. Instead, Creditor elected not to participate in this case or release the Lien, and to ignore three separate Orders without explanation. Creditor's failure to participate and to comply with the Court's Discharge, Avoidance, and Release Orders warrants an award of mild non-compensatory damages. The Court awards Debtor mild non-compensatory damages of $7,500.

The Court also finds that an additional coercive sanction may be warranted. Although the Release Order states that "Debtor is authorized to present [the] Order to the applicable recording office and the designated recording officer shall note the release in the applicable lien records," Debtor argues that doing so many not be a valid lien release under Kentucky law. *See* Supplemental Brief at 2-3 (citing K.R.S. § 382.290; *Ethington, et al. v. Rigg*, 173 Ky. 355, 358 (1917)). The Court declines to comment on that issue of state law, but in light of the 13 years between avoidance of the Judgment Lien and the entry of this Order, the Court finds that a sanction to coerce Creditor into complying with the Discharge Order, Avoidance Order, and Release Order is appropriate if the Judgment Lien has not been released. No earlier than 14 days after service of this Order, the Court will require Debtor to file a notice stating whether the Judgment Lien is released and serve same on Creditor. If the Judgment Lien has not been released, the Court will require Creditor to pay Debtor $100 per day, commencing on the date that Debtor files the notice and continuing until the Judgment Lien is released.

## CONCLUSION

IT IS HEREBY ORDERED as follows:

1. The Contempt Motion [ECF No. 19] is GRANTED.

2. Creditor is in contempt for violating the discharge injunction imposed by § 524(a)(2).

3. Within three days of the entry hereof, counsel for Debtor shall serve a copy of this Order on Creditor in the manner that Bankruptcy Rule 7004(h) requires and shall file a certificate of service as required by KYEB LBR 9022-1(b).

4. Debtor is awarded $10,273 in actual damages, attorney's fees totaling $5,995, and mild non-compensatory damages of $7,500 (total $23,768). Within 14 days of the service of this Order, Creditor shall pay this amount to Debtor.

5. No earlier than 14 days after service of this Order, Debtor shall file a notice in the record of this case stating whether the Judgment Lien is released and serve same on Creditor in the manner that Bankruptcy Rule 7004(h) requires. If the Judgment Lien has not been released, Creditor shall pay Debtor $100 per day, commencing on the date Debtor files the notice and continuing until Creditor releases the Judgment Lien and files a notice of same in the record of this case.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Tuesday, May 28, 2019**
**(tnw)**